**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


**LISA SUZANNE MOSS**                                                      **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO. 2:04cv230-KS-JMR**

**BEDFORD CARE CENTER-
MONROE HALL, L.L.C.**                                              **DEFENDANT**


**MEMORANDUM OPINION AND ORDER**

        This matter is before the court on the Motion for Summary Judgment **[#76]** filed

on behalf of the defendant.  The court, having reviewed the motion, the response, the

briefs of counsel, the pleadings and exhibits on file, the authorities cited, and being

otherwise fully advised in the premises finds that the motion is well taken and should be

granted.  The court specifically finds as follows:


**FACTUAL BACKGROUND**

        Plaintiff, Lisa Suzanne Moss ("Moss") has filed a Complaint and amendments

thereto against Monroe Hall[1] alleging that Monroe Hall terminated her employment in

violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA").

Moss also alleges that the defendant treated her differently because of her hearing in

violation of her civil rights, "secured by the Constitution and laws of the United States

_____

        [1]   The parties have stipulated that Monroe Hall is the successor in interest of previous owners of
the nursing care facility at which the plaintiff was employed at all relevant times hereto.

and Mississippi", and apparently also in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et. seq.*  She has subsequently withdrawn any Title VII claims previously asserted.

The defendant, Bedford Care Center-Monroe Hall L.L.C. ("Monroe Hall") operates a nursing home facility in Hattiesburg, Mississippi.  The plaintiff was an employee of Monroe Hall.  Moss has a hearing impairment and wears hearing aides in both ears.  Moss was originally hired in October of 2001 to work in the defendant's housekeeping department at which time she told her supervisor of her hearing problem and that she needed others to look at her when they spoke.  During the time of her employment in this department, Moss alleges that she had no difficulties or misunderstandings on account of her impairment.

Moss resigned from her employment with the defendant in April of 2002, to move to Gulfport to assist her daughter.  She returned to work for the defendant in July of 2002 and asked to be placed back in the housekeeping department.  However, the defendant had no openings in that department and instead hired her in the dietary department at which time she informed her new supervisor, Mattie Atkins, of her hearing disability.

Moss alleges that her difficulty hearing and the subsequent problems caused by her difficulty in using the telephone ultimately led to her unlawful termination. Prior to the difficulties leading to her termination, Moss alleges that in December 2002, her sister notified her supervisor that she did not communicate well on the phone, and that later her supervisor told Moss that she would not speak with Moss' family members on the telephone and that she should communicate on the phone regardless of her

2

disability.

Moss alleges that she was first reprimanded in January of 2003 for speaking with the nursing home director about being transferred back to the housekeeping department (where she had initially worked) without going through the chain of command. Thereafter, she was reprimanded a second time in April of 2003 for misunderstanding her supervisor on the phone during a telephone conversation concerning her coming in to work on a particular day. She was reprimanded a third time on June 17, 2003, for insubordination to her supervisor during a phone conversation on June 13, 2003. Moss alleges that she was then terminated according to company policy for receiving three reprimands. The defendant has refuted that this is company policy and Moss has pointed to no evidence to the contrary. This allegation is irrelevant to the issues before the court.

The first meeting that resulted in a reprimand allegedly related to the plaintiff's hearing problem occurred on April 22, 2003, as a result of an alleged misunderstanding during an earlier phone conversation regarding Moss swapping work schedules with a co-employee. Moss admits that during the meeting with her supervisor, Mattie Atkins, and in the presence of Tangela Crosby, she became angry, yelled at Atkins, pointed her finger in Atkins' face, and snatched a pen out of her hand when Atkins asked her to sign a Corrective Action Report about the matter. Moss also admitted that when she snatched the pen from Atkins hand it fell to the floor and, "it looked like I threw it." Robert Perry, the facility administrator, was then called by Atkins to her office. He informed Moss that he would not tolerate her yelling and pointing her finger at supervisors, and if she did it again she would be subject to disciplinary action.

3

On June 13, 2003, Moss called Atkins at approximately 3:00 a.m. to let her know she would not be able to report to work that morning as scheduled due to an eye injury. According to Atkins, Moss did not allow her (Atkins) to talk during the conversation because Moss interrupted her when she (Atkins) attempted to speak.  Atkins describes the plaintiff's phone conduct as Moss being overbearing during the call.

On June 17, 2003, Atkins and Perry met with Moss in Perry's office for the purpose of counseling Moss about the manner in which she had talked to Atkins on the phone on June 13.  According to Perry's affidavit and deposition testimony, when the meeting began, he did not intend to discharge Moss, but simply intended to talk with her and counsel her about the way she had talked to Atkins on the telephone.  During that meeting Moss became angry, raised her voice, and told Atkins she wanted to know what she needed to do so she could understand her over the "damn" telephone.  Moss admits that she yelled at Atkins, shook her finger at Atkins, and used profanity during the meeting.  Perry told Moss to stop cursing in his office and that he was not going to tolerate her cursing.  After Moss exhibited the angry behavior. Perry told Moss that she was being suspended.

On June 19, 2003, Moss was notified by Perry that her employment was being terminated because of profanity and the discourteous and disrespectful conduct which she directed toward her supervisors which Perry considered insubordination and further that she was being terminated for a "bad attitude" and cursing in his office.  As pointed out above, Moss has admitted to engaging in such behavior.

On October 22, 2003, Moss filed a Charge of Discrimination against the defendant with the EEOC.  In her EEOC charge, Moss alleged that she was

4

discriminated against in violation of the ADA by 1) being written up because she misunderstood or couldn't hear Atkins over the telephone and 2) not being allowed to transfer to the housekeeping department where her hearing impairment presented no problems.

The EEOC found no evidence that the defendant had violated the ADA, and that instead the evidence disclosed Moss was "discharged on June 19, 2003 for being disrespectful to (her) supervisor".  A right to sue letter was issued and the plaintiff instituted the instant proceedings.  The defendant has filed the present motion seeking summary judgment.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence

favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  Id.  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by

6

identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must

consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting

*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## AMERICANS WITH DISABILITIES ACT

The ADA prohibits discrimination "against a qualified individual with a disability

because of the disability of such individual in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job training,

and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The

Fifth Circuit has held that the threshold requirement in any ADA claim is that a plaintiff

must first establish that she has a disability.  *de la Torres v. Bolger*, 781 F.2d 1134,

1136 (5th Cir. 1986).

The ADA defines a disability as follows:

(A) a physical or mental impairment that substantially limits one or more of the
major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Claims under the ADA follow the same burden shifting framework of other

employment discrimination cases as established in *Texas Department of Community*

*Affairs v. Burdine,* 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1093, 94, 67 L.Ed.2d. 207

(1981).  A plaintiff seeking redress through the ADA must first establish a *prima facie*

case of disability discrimination.  Once she does so, the burden then shifts to the

defendant to articulate a legitimate nondiscriminatory reason for the adverse

employment decision.  If the employer does so, then the burden shifts back to the plaintiff to demonstrate that the reason proffered by the defendant is merely a pretext and that the true reason for the action is illegal discrimination.  *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955 (5th Cir. 1993).  However, the ultimate burden of proving intentional discrimination remains with the plaintiff at all times.  *Id.*

In order to establish a *prima facie* case of disability discrimination, Moss must be able to establish the following:

1)      she suffers from a disability as that term is defined by the ADA;
2)      she is a qualified individual--i.e., she is capable of performing the essential functions of the job in question, with or without reasonable accommodation; and
3)      she was terminated because of her disability.

*Pegues v. Emerson Electric Co.*, 913 F. Supp. 976, 979 (N.D. Miss. 1996).

The defendant denies that the plaintiff has a disability within the meaning of the ADA but asserts that this issue is not germane to the outcome of this particular motion.  Indeed, "[a] physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA.  The statute requires an impairment that substantially limits one or more of the major life activities."  *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995).

The bulk of the plaintiff's brief in response to the motion is devoted to establishing that she in fact does have a "disability."  However, the defendant has asked the court to assume, for purposes of this motion only, that the plaintiff does suffer from an identified ADA disability, but to consider  that she cannot meet her burden of proof to show that she was discriminated against on account of that disability.  Specifically, the

9

defendant contends that the plaintiff has failed to offer proof which creates a genuine issue of material fact that she suffered an adverse employment decision as a result of the disability because she cannot show that her termination was on account of her disability, thus failing to make out her required *prima facie* case of discrimination.  In the alternative, the defendant argues that even if the court finds that the plaintiff has made out a *prima facie* case of discrimination, Monroe Hall has come forth with a legitimate, non-discriminatory reason for its actions which have not been shown to be pre-textual by the plaintiff.

There is no doubt that the plaintiff was fired and that such is certainly an "adverse employment decision."  The question, however, is whether the plaintiff was fired "because of her disability?"  After a thorough review of the facts surrounding the plaintiff's termination, the court concludes that the plaintiff has failed to establish a genuine issue of material fact as to the third element of the *prima facie* case.  The plaintiff has not created a genuine issue of material fact as to whether she was terminated "because of her disability."  "The [ADA] was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers."  *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993).  The defendant has amply demonstrated that it  had just cause for terminating the plaintiff, unrelated to her hearing loss, and she has produced no credible evidence to the contrary.

Mississippi is an employment at will state and an employer can fire an employee, not subject to an employment contract, for a good reason, a bad reason or for no reason, subject to narrow public policy exceptions and as long as the firing is not

10

motivated by intentional discrimination.  *See Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086 (Miss. 1987).  Certainly, employers have the absolute right to discipline employees for bad behavior.  The plaintiff, unfortunately, chose to display bad behavior when confronted with disciplinary actions by her supervisors.  There are consequences to our actions.  Sometimes, those consequences may seem unfair or un-called for but as long as they do not run afoul of the law, this court has no remedy to prevent those consequences.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendant's Motion for Summary Judgment **[#76]** is Granted and the plaintiff's Complaint is dismissed with prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that any other pending motions are dismissed as moot.

A separate judgment will be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 12th day of July, 2006.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE